IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TITUS HENDERSON,

                              OPINION and ORDER

            Plaintiff,

                              09-cv-170-bbc

     v.

RICK RAEMISCH, PETER HUIBREGTSE,
GARY BOUGHTON, ELLEN RAY,
TOM GOZINSKI, WELCOME ROSE,
AMY SMITH, HELLEN KENNEBECK,
KATHRYN ANDERSON, LARRY PRIMMER,
JANA JUERGENS, MONICA HORNER,
TRISHA LANSING, NANCY SALMON,
C. BEERKIRCHER, THOMAS TAYLOR,
DAVID GARDNER, LT. BOISEN, BRIAN KOOL,
TIM HAINES, CRAIG TOM, LT. HANFIELD,
JOSH BROWN, H. BROWN, W. BROWN,
SGT. FURER, CO NEIS, SGT. CARPENTER,
SGT. BOARDMAN, SGT. BLOYER,
COII JONES, COII JOHNSON, CO HULCE,
COII KARNOPP, R. STARKEY,
SGT. WALLACE, COII ECKT, COII EWING,
D. ESSER, M. SCULLION, JEROMEY CAYA,
JENNIFER SICKINGER, JOAN WATERMAN,
WENDY THOMPSON, SGT. TREFT,
SGT. COOK and JOHN DOES,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1

In a December 12, 2011 order, I dismissed plaintiff Titus Henderson's proposed amended complaint, dkt. #23, for failure to comply with Federal Rules of Civil Procedure 8 and 20. I summarized plaintiff's 129 numbered allegations against more than 60 named defendants as follows:

- Twice in early 2004, prison staff contaminated plaintiff's food.

- In March 2004, prison staff placed an "invalid restriction" on plaintiff that caused him to be denied 12 meals over 6 days.

- In 2006, plaintiff was threatened with physical harm by prison officials. When plaintiff informed high-level officials of the threats, they failed to intervene.

- On November 1, 2006, prison staff contaminated plaintiff's food. To cover up this act, defendants Ellen Ray, C. Beerkircher and Kelly Trumm falsified grievance documents.

- In February 2007, plaintiff was given a false conduct report that resulted in his being denied 30 meals over the course of 15 days.

- In May 2007, plaintiff was wrongly placed on a "back-of-cell restriction" forcing him to sit naked in the back of his cell when his meals were delivered. Plaintiff refused to do this and was then denied numerous meals. After plaintiff filed a grievance, he was taken to a freezing, dirty cell with no clothes or bedding and was denied medical care for the symptoms caused by the lack of nutrition.

- In August 2007, defendants J. Sickinger and J. Caya put a rock in plaintiff's food and then denied him medical care after he broke his tooth on the rock.

- In May and June 2008, prison staff denied plaintiff numerous meals.

- From August through October 2009, prison staff twice forged conduct reports against plaintiff and then denied him numerous meals as punishment.

2

- Twice in 2010, prison staff contaminated plaintiff's food.

- In January and February 2011, prison officials "forged prison files to deny [plaintiff] 34 meals within 15 days, as punishment."

- Union officials intervened in the investigation of prison staff involved in these claims to prevent them from being fired. These officials encourage the practice of hiring only white prison guards.

- Every time plaintiff is denied food for a 7-10 day interval, he loses about 30 pounds and suffers acute headaches, blurred vision and heart palpitations.

Dkt. #28. I noted that plaintiff attempted to tie all of the allegations together under the umbrella of an overarching conspiracy against African American inmates in general and plaintiff in particular, but concluded that these allegations violated Rule 8. I gave plaintiff a chance to submit a new amended complaint more fully setting forth his conspiracy allegations. Plaintiff has responded to the December 12, 2011 order, but not with a new amended complaint. Instead, he raises several new issues and has filed a motion for appointment of counsel.

First, he argues that I must recuse myself in this action because I had ex parte communications with defendant Ellen Ray and Lebbus Brown, ordering them to confiscate plaintiff's "property concerning the civil petition [I] dismissed because [plaintiff] pose[s] a threat." Also, plaintiff alleges that I told Ray, other defendants and the United States Marshals Service that plaintiff threatened to kill me, creating a conflict of interest.

28 U.S.C. §§ 144 and 455 apply to motions for recusal and disqualification of judges.

Section 144 requires a federal judge to recuse herself for "personal bias or prejudice." Section 455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and section 455(b)(1) provides that a judge shall disqualify herself if she "has a personal bias or prejudice concerning a party." Because the phrase "personal bias or prejudice" found in § 144 mirrors the language of § 455(b), they may be considered together. Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000). In deciding whether a judge must disqualify herself under 28 U.S.C. § 455(b)(1), the question is whether a reasonable person would be convinced the judge was biased. Hook v. McDade, 89 F.3d 350, 355 (7th Cir. 1996) (internal quotation omitted). Recusal under § 455(b)(1) "is required only if actual bias or prejudice is proved by compelling evidence." Id. (citation and quotation omitted).

I will deny plaintiff's motion for my recusal. This is not the first time plaintiff has alleged that I have had ex parte communications with defendants. In the June 20, 2011 order in this case, I denied plaintiff's previous motion for my recusal, stating as follows:

> In his letter, plaintiff states that a prison staff member told him that defendant Ellen Ray contacted me by telephone, and I told her that I was going to dismiss plaintiff's case "because it's not in the proper form." I will deny plaintiff's motion for recusal for two reasons. First, I never had this conversation with defendant Ray, and plaintiff should have no reason to fear that I would have ex parte communications with his opponents.

Dkt. #16. Plaintiff's current motion is equally unfounded. I have not had conversations

4

with any of the defendants in this action or issued any orders to confiscate plaintiff's legal materials (it is virtually impossible to envision a scenario where this court would even have the power to confiscate his materials.)  I have not said anything to anyone about death threats because I have not had any such threats.  Plaintiff does not explain whether he actually made these threats, or when or how he did so, which leads me to believe that he has fabricated the issue in an attempt to obtain a new judge.  I conclude that there is no reason to recuse myself in this case.  E.g. United States v. Yousef, 327 F.3d 56, 170 (2d Cir. 2003) (threat against judge made for purpose of harassment does not require disqualification); United States v. Greenspan, 26 F.3d 1001, 1006 (10th Cir. 1994) ("Had there been any reason to believe that threats were made only in an attempt to obtain a different judge, to delay the proceedings, to harass, or for other vexatious or frivolous purpose, recusal would not have been warranted.").

Next, plaintiffs seems to seek reconsideration of the December 12 order for a number of reasons.  First, he argues that his amended complaint does comply with Rules 8 and 20, stating that the "U.S. Supreme Ct. require[s] Judge Crabb to accept Dkt. #23 as [in] compliance with F.R.C.P. 8 +20," and citing Moore v. Indiana, 999 F.2d 1125 (7th Cir. 1993).  Leaving aside the fact that Moore is not a Supreme Court decision, nothing in that opinion supports plaintiff's position. Instead, in that case, the Court of Appeals for the Seventh Circuit upheld the district court's denial of the plaintiff's motion for leave to amend

5

his complaint because plaintiff's efforts were futile. Moore, 999 F.2d at 1128. Nothing in plaintiff's response persuades me that I was incorrect in dismissing his amended complaint for violating Rules 8 and 20.

Plaintiff next argues that I "intentionally falsified" two portions of his complaint. First, plaintiff states that he did not "refuse" to follow certain cell restrictions in May 2007 as I stated in the December 12 order, but rather he was "told by other defendants Bloyer, et al. not to follow restrictions." Second, he says that his amended complaint did not state that he broke his tooth on a rock placed in his food. However, a double-check of plaintiff's amended complaint shows that he *did* make these allegations. He alleges that he was denied meals because he would not sit on the floor in the back of his cell, dkt. #23, ¶¶ 25-36, and that he "pushed [the] emergency button requesting to see a doctor because I broke my tooth on the rock." Id., ¶ 75. Moreover, even if I had been incorrect in my characterization of plaintiff's allegations, the error would not have been prejudicial, as these details do not affect the overarching problem with plaintiff's proposed complaint, which is that it violates Rules 8 and 20.

Finally, plaintiff argues that he cannot provide any further detail about the conspiracy allegations in his complaint because he is concerned about violating a secrecy order issued in a 2007 Wisconsin "John Doe" criminal proceeding before Judge Curry. Plaintiff states that I have "the authority to subpoena Judge Curry + proceedings that set forth in detail[]

6

. . . attempted murder, conspiracy, and racism by defendants without violating state law." Plaintiff has not suggested any basis on which this court could obtain material from the John Doe proceeding or why it should be up to this court to do so. In a previous case of plaintiff's I have suggested that the court cannot override a secrecy order from a John Doe proceeding. Henderson v. Frank, 2007 WL 5414920, *1 (W.D. Wis. Feb. 9, 2007) ("Because issuance of a subpoena to compel the production of documents [from a John Doe proceeding] that may not be revealed to plaintiff pursuant to state law would have to result in an immediate motion to quash and because such a motion would have to be granted, it would be a waste of judicial resources to issue a subpoena for the purpose plaintiff seeks it.")

In any case, even assuming that this court has the power to compel the disclosure of John Doe proceeding testimony, plaintiff would have to show a "particularized need" for the disclosure. UnitedStates v. Crumble, 331 F.2d 228, 231 (7th Cir. 1964) ("Assuming, for the purpose of this case, that the District Court has power and authority to compel disclosure of testimony given under [a predecessor Wisconsin John Doe proceeding statute] . . . we are of the opinion that a proper regard for the preservation of a delicate balance of state-federal relations in this area demands that we here be governed by the doctrine which has been applied to protect the secrecy of federal grand jury testimony.") See also United States v. Campbell, 324 F.3d 497, 498-99 (7th Cir. 2003) ("To obtain grand jury materials, one must make a strong showing of particularized need that the information is needed to

7

avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only material so needed.") (quotations omitted).

In the present case, plaintiff fails to show that John Doe testimony is necessary to file a complaint that complies with the federal rules. In the December 12 order, I explained the Rule 8 problem with his conspiracy allegations:

> The closest plaintiff comes to properly alleging a conspiracy is his allegation that Department of Corrections officials and prison staff worked together to promulgate and enforce prison regulation WSPF 536.03, which served to target black prisoners, resulting in their being denied basic necessities such as food. However, because plaintiff does not provide more specific allegations, his claims of conspiracy are unclear and violate Federal Rule of Civil Procedure 8, which requires in part "a short and plain statement of the claim showing that the pleader is entitled to relief." Is plaintiff saying that there is a prison rule explicitly targeting black prisoners? Is he saying that this is the regulation describing the "back of the cell" restriction that plaintiff has repeatedly defied, with the result that he was denied many meals? Or is he saying something else? Without more information from plaintiff, I cannot conclude that his allegations of conspiracy adequately tie all of his individual claims together.

Dkt. #28. Plaintiff should not have to reveal John Doe proceeding testimony in order to answer the questions raised in the December 12 order. Prison regulation WSPF 536.03 is a public document and he should have personal knowledge about his back of the cell restriction. Accordingly, none of plaintiff's arguments persuade me that I was incorrect in dismissing his amended complaint for violating Rules 8 and 20.

This leaves the question of how to proceed. Plaintiff both implies that he is willing to file a new amended complaint (provided the court gives him a copy of his first amended complaint and orders prison staff to return him his legal materials), and states that he "looks forward to dismissal and appeal of this action." At this point I will assume that plaintiff wishes to take advantage of a final chance to submit an amended complaint that satisfies Rules 8 and 20. I will give plaintiff until January 24, 2012 to submit a new proposed amended complaint. I emphasize that this is plaintiff's final chance, and I suggest that he consider choosing a smaller, more manageable portion of his allegations to pursue under this case number rather than attempt to tie together allegations against 60 different defendants. Further, I will attach a copy of plaintiff's first amended complaint so that he can refer to his previous allegations.

However, I will not order prison staff to return plaintiff's legal materials. Plaintiff does not state what these materials are or why he needs them in order to file his new amended complaint. In addition, I will deny his motion for appointment of counsel. As I have stated previously in this case, it is premature to consider appointing an attorney when it is not yet clear whether plaintiff can even state a claim upon which relief may be granted. Completing a new amended complaint is a task plaintiff should be able to complete by himself, drawing on his previous complaint and recollection of events.

9

ORDER

IT IS ORDERED that

1. Plaintiff Titus Henderson's motion for my recusal, dkt. #29, is DENIED.

2. Plaintiff's motion for reconsideration of the December 12, 2011 order dismissing his first amended complaint, dkt. #29, is DENIED.

3. Plaintiff's motion for an injunction directing prison staff to return plaintiff's legal materials, dkt. #29, is DENIED.

4. Plaintiff's motion for appointment of counsel, dkt. #29, is DENIED.

5. Plaintiff will have until January 24, 2012 to submit a new proposed amended complaint that complies with Federal Rules of Civil Procedure 8 and 20.

Entered this 10th day of January, 2012.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge